CASE NUMBER 13-12-30. Do I understand, Mr. Clark, that you want to reserve five minutes for rebuttal? Yes, ma'am. Okay, and then we are dividing the response arguments between the ITC and Otter, between eight and seven, is that right? Yes, ma'am. Okay, seven for Mr. Mastriani? Yes, ma'am. Okay. All right, Mr. Clark, you may begin. Good morning, Your Honor, and may it please the Court. My name is Terry Clark and I represent Griffin Technology. Mr. Clark, on pages 17 and 18 of your blue brief, you complain that the only evidence that the Administrative Law Judge stated, and you quote, he didn't find Mr. Anders' testimony persuasive, that the underpinnings of Mr. Anders' testimony are vaguely flawed and so on. That's right. Right? Yes, Your Honor. And you say, as a result, the determinations are not supported by substantial evidence. But the ALJ also says, in other parts, that he specifically believes Mr. Anders as a witness. Isn't that right? Yes, Your Honor, that's correct. Are you saying that these instances of disbelief legally require the finder of fact to disbelieve all testimony by that witness? No, Your Honor, we're not saying that at all. What we are saying is this, that the issue of infringement that was addressed by the Commission was intertwined with the claim construction that was conducted by Judge Essex and rejected by the Commission, so that when you looked at the infringement analysis as it was applied to the iPod case at issue, that that testimony was not credible. And I can explain. Well, you'd better, because it looks to me like you're making a legal argument here when you say, not supported by substantial evidence, as a result. Your Honor, the point of credibility is simply this. The expert report that the Commission relied on was based on one or more interpretations. It's not really clear what interpretation was being applied by the expert. And during the course of the, or during preparation of the initial determination, Judge Essex went to great lengths to consider Otter's arguments and in particular the expert's position with regard to claim interpretation. So when you're looking at the infringement analysis that underlies the expert report, which the Commission relied on, and they said in no uncertain terms that was the only evidence that they considered, and the only evidence of record on point, then the underlying interpretation that was used is completely unclear. What we do know is this. Certainly it was not the interpretation that was adopted by Judge Essex, and was later adopted by the Commission expressly. We do know that he considered Otter's interpretation, which was outright rejected by Judge Essex. And he said, in part of his testimony on direct, that the interpretation that he applied in preparing that expert report was the staff's proposed interpretation of the plain meaning of the term group. But what you look at, and what you see from the record, is that actually there were a couple of different dictionary definitions that were proposed by the staff. And there's no direct testimony of record as to what analysis was being applied in support of the expert's report on the issue of infringement. So if you take all of... What on earth does that have to do with the particular instances where the ALJ says, well, I don't believe him on this? Because the ALJ went to great lengths to question the credibility of the expert's interpretation of the plain underlying his opinions of infringement. He went to great lengths, or he believed him on most of it? He believed Otter's expert with regard to claim interpretation? He believed Mr. Anders. Your Honor, with all due respect, there were numerous portions in the initial determination where Judge Essex did not agree with Otter's expert. And there were... I think this is really the point that he's getting to, which is you seem to argue that if an expert testifies, and for instance, I don't find point A to be credible, that somehow point Z also becomes not credible, even though I make a finding that I do find point C credible. In other words, just because I don't buy one of their arguments doesn't mean I can't buy the other arguments. Your Honor, that's not what we're trying to argue at all. Okay, but that seems to be what you're saying in your brief. Let me attempt to clarify. What we're saying is this, is Otter's expert took some very aggressive positions with regard to claim interpretation, which Judge Essex went through at great lengths, point by point by point, to say that it attempts to read distinctions between certain claim terms out of the claim, that they're nonsensical. Those are... Right, so he rejected those points, and in fact, he adopted your proposed claim construction, correct? Your Honor, that's correct in part. What he did was he took two dictionary definitions, which were presented by the staff, and a different dictionary definition presented by Griffin, and formulated his own hybrid. You're telling us here, and you've said more than once in your brief, that you don't object to that claim construction. That's exactly correct, Your Honor. Your argument then is that the commission somehow misapplied that claim construction. Both the commission, as well as the administrative law judge, in their infringement analysis. Well, did you ever ask for a construction that excluded openings? Your Honor, the dictionary definition, the answer to your question, to exclude openings? Yes. Did you ever ask for a definition that said, if the long, narrow shape also serves as an opening, it needs to be excluded from the definition of groove? Your Honor, no, we never asked for that construction. Isn't that a claim construction concept? Well, the way Judge Essex performed the analysis for claim construction, is he focused on the plain and ordinary meaning of the term groove. Which is what you asked him to do. And we didn't take exception to that, because the plain and ordinary meaning of the term groove would necessarily require a groove with a bottom. With a what? With a bottom. You never asked for that, though. You never said, it has to have a bottom. Your Honor, we never specifically asked for an interpretation that a groove required a bottom, but it was inherent within the definition of that term that we proposed to Judge Essex. And that he adopted it. What you notice from the interpretation that Judge Essex ultimately derived was the fact that he did not, he did not specifically include opening or hole. And this emphasizes a very important issue that we've argued repeatedly during this entire process. There is a clear distinction that exists between the term opening and the term groove. Okay. And my problem is, is that you never asked for that distinction to be drawn as part of the claim construction. Your Honor, the reason why we didn't have to ask for that claim construction, because it was inherent in the definition that was adopted by Judge Essex. The types of terms that were used to describe groove that were in the dictionary definition inherently required a bottom. If Judge Essex wanted to include holes or voids or anything else, then those would have been appropriately placed in that claim interpretation. But instead, what he did is he adopted the dictionary definition and expressly held that the dictionary definition was consistent with the intrinsic record, intrinsic evidence that was before the court. Right. I mean, he pointed to three or four places in the specification that supported the construction. He didn't just go to some dictionary cold, right? He really, he sided with you and the staff and came up with a definition that he felt was supported by the specification. That is exactly correct, Your Honor. Okay. And you didn't object to the commission that that construction was wrong? Your Honor, there was no reason to object. You say you agree with it. We agree with it, Your Honor. There was no reason to object because Judge Essex took the term groove and he looked at the dictionary definitions and saw that it was consistent with the evidence before him. He drew a clear line of distinction between the term opening and the term groove and concluded that the dictionary definitions were accurate. Right. A long and narrow cut is what he construed it. Actually, I think it was a long, narrow cut referral. Okay. So when he did that, why didn't you go back and say, you know, Judge Essex, you're missing the point here. It's got to have a bottom. And you didn't say that. Because Judge Essex wasn't missing the point, Your Honor. He knew the plain and ordinary meaning that he assigned to that claim term was accurate. The problem was, is when it was applied for purposes of infringement. Because in purposes of infringement, what he did, in particular with regard to the analysis of the IPAD 2 case, he read that completely. He never applied that interpretation. What he said was, is in essence, any opening that's long and narrow could qualify as a groove. But yet, during the claim interpretation portion of the initial determination, he says, well, there's a clear line of demarcation between opening and groove. I don't know why that the drafters of the patent specification used those particular terms. But they used them exclusively, and they used them consistently. Nowhere in that specification does it say that an opening can be a groove. An opening, in a hard shell case, is for purposes of giving access. It's a hole. It's a hole. But in this particular instance, ultimately, there is not direct access to the operational items on the phone, because you still are getting only to the plastic cover. I mean, the flexible plastic. That is correct, Your Honor. But it's being able to have access to the hard shell case that's housed within the cover. Tell me if this is wrong, and if so, why. Sometimes there are difficulties in separating the claim construction piece of analysis from the infringement piece of the analysis. To the extent that you are arguing that a cut, for example, cannot, in the context of this patent, go all the way through the hard shell, that seems to me an argument that you had to make at the claim construction stage. And not having made that argument, an argument based on the written description and prosecution history and whatnot, it seems to me what you are left with at the infringement stage is nothing other than what could a rational person decide constitutes a cut. All contexts decide. And it seems to me you can't get out of the meaning of the term cut all by itself, which is what it seems to me you're left with after claim construction, a restriction that says it can't go all the way through the thing being cut. Your Honor, I'm going to try to hit every one of the points that you just presented to me. And if I miss one, please point it out to me. We made the arguments with regard to the differences between an opening and a groove. And we presented the dictionary definitions consistent with that argument that a groove had to have a bottom. You did that during claim construction? We did that during claim construction. But you proposed a claim construction that, among other things, covers a long, narrow cut. Well, Your Honor, in particular what we argued is that the patentee was his own alexiographer by drawing the distinction between groove and opening. Right. Here's what I'm trying to, I mean, it seems to me we had a lot of questioning here that all are trying to figure out what happens, what's on the side of the, on the claim construction side of the line that separates claim construction from infringement, from application. And it seems to me that what has to be only on the claim construction side of the line is arguments that are different from, take the words that have been now agreed to in the claim construction without more and simply apply those as English language words to the accused. And it seems to me that you are really making an argument that is not that argument. I don't think it's possible to say that a cut can't go through here the hard shell. You're making an argument that says in the context of this patent, a groove can't go through the hard shell. And that seems to me a claim construction argument which you did not make. Well, actually it's slightly modified from that, Your Honor. We made the argument that a groove was different from an opening and a groove required a bottom. And we presented dictionary definitions to Judge Essex that he agreed were consistent with the evidence before the court. And those dictionary definitions don't use terms like opening and hole and other things like that, they use furrow and channel and cut. Which would suggest to one of ordinary skill in the art that a groove must have a bottom. And certainly based on what Judge Essex said during claim interpretation, it had to be different from an opening. So when that claim interpretation was rendered by Judge Essex, we felt confident that if a groove had to have a bottom and it was different from an opening, that when you applied the infringement analysis, that all of those issues that the court had presented to me today were taken care of. Did Judge Essex ever say to you, I'm agreeing with your argument that a groove has to have a bottom? Well, Your Honor, I wasn't the attorney that represented Griffin during the investigation, so I can't really answer that, but I didn't see that during my review of the record. So really the question is, to finish up the answer to the question, is when that term was ultimately applied with regard to the IPAD 2 case, and we made the argument that a groove had to have a bottom, Judge Essex summarily dismissed it and said the plain and ordinary meaning is something different. So we're left in the situation where we made the arguments which the court today confirmed that we should have made in claim interpretation. We got the interpretation that we wanted and we advanced, but Judge Essex seemed to have applied a different interpretation when it was actually administered in the infringement analysis. And when you went to the commission, you only argued it as if the infringement analysis was wrong. You did not ever say that the claim construction was wrong. That is correct, Your Honor. Notice that my time is up. Yes. We'll give you, did you have the rebuttal time built into that? Everybody does it differently, so I need to make sure. All right, so we'll give you three minutes for a rebuttal. Thank you, Your Honor. Okay, Mr. Hughes. Good morning and may it please the Court. Griffin states here that it had no reason to challenge the ALJ's application of his claim construction to the accused products. Now, in the ALJ's IV, the ALJ specifically stated in JA-72 that a group, if construction does not require a group to have the bottom. Griffin had the opportunity to challenge that before the commission, had multiple chances to challenge that before the commission, and Griffin never did. But in fairness, when the ALJ then applied his construction, which did not require a bottom, but he did seem to differentiate between openings and grooves in his application, did he not? He actually did that in his claim construction. What the construction that the interviewee has presented would have resulted in any opening at all, regardless of the shape being a groove, as long as a tab would fit within it. And the ALJ carefully went through the specification, the prosecution history, the claim language, and found that that would obliterate the distinction the patent seems to draw between an opening and a groove. And the ALJ specifically found that a groove has to be a specific shape. And he agreed with Griffin and the IA that the groove should be given its plain and ordinary meaning of being a long, narrow cut of ferrule. So the ALJ concentrated on the shape of the groove, which was a struggle at the commission, before the commission, was whether a groove could be any shape at all, could be any feature, or whether it had to be restricted to its plain and ordinary meaning. Griffin never once argued before the commission, during the claim construction phase, that a groove had to be limited to a specific embodiment in the patent. They never made that argument. They never presented their own construction outside of the plain and ordinary meaning of groove before the commission. And they had multiple chances to do that, notably in their petition for commission review. They should have argued before the commission that the ALJ's understanding of the ordinary meaning was not correct. They never did. They specifically stated that they agreed with the ALJ's construction, and they only relied on their prosecution history estoppel and lexicography argument. But these arguments require restricting the ordinary meaning. So on the one hand, they argued that they agreed with the ordinary meaning. They do that before the court. Once in the opening brief on pages 9 and 10, they do it again in the reply brief on pages 3. They emphasize that the ALJ's claim construction was correct. But then on the other hand, they argue for prosecution history estoppel and lexicography to restrict the very claim construction they say is correct. They can't have it both ways. It's a little difficult for me to understand why there was a shift from the claim language using the word feature to the claim language using the word groove. Now, obviously, there's an argument that that was a disclaimer. What was the point of that change? It was in response to a rejection. That's correct. So shouldn't we assume there was some meaning to it? Right. Our understanding is based on the ALJ's claim construction, it went to the shape. So it went to the shape of the feature as opposed to its depth. So the patentees below originally had recited a feature that the tab would fit within. So which could have any shape at all. It could be anything, provided the tab would fit within it. That would have satisfied the feature limitation. During prosecution, they took that out and replaced that with groove. So the claim term, they replaced feature with groove. And the ALJ's analysis of the patentee's self-prosecution history, he found that a groove has to be a specific shape. So the ALJ was actually very, very careful. The prosecution history informed his acceptance of the plain and ordinary meaning. So he was very careful to draw the distinction that the patentee seemed to draw below during prosecution. You argue that there was no objection to the construction before the commission, and so therefore we're left with a substantial evidence review, right? That's correct. But to the commission, there was an objection where they specifically said that the ALJ's findings should be reviewed and overturned because the ALJ's determination that these features are grooves directly contradicts the patentee's own choice of terms in the 1-2-2 patent. So I guess my question is, wouldn't that at least raise the specter of the question of the propriety of the claim construction? No, Your Honor. What they invited the commission to do was they invited the commission to compare the accused product to embodiments in the patent. What the commission found was consistent with this court's precedent that it's improper to do in an infringement analysis. And this court's well-established precedent makes that very clear. That is what Griffin invited the commission to do. That was the first thing they invited the commission to do. The second thing they invited the commission to do was to restrict the plain and ordinary meaning of groove to embodiments in the patent. But even there, Griffin never presented to the commission why the commission had to do that. For example, they never presented to the commission where in the patent that the patentee acted as their own lexicography and provided a specific definition of groove. They never did that. They pointed to the prosecution history. The prosecution history, what they did was the patentee replaced feature with groove. They never limited groove in any way. So in that regard, the commission found that Griffin's arguments were not persuasive. As I read the ALJ's infringement analysis, the ALJ didn't base its non-infringement finding on the fact that it also served as an opening, which is what I think the commission characterized it as. I think he said it didn't infringe because it didn't tightly fit within the groove. Right. Because it was designed to go back and forth. That is only with respect to the iPod touch. Yes. And there again, the reason the commission referred to the ALJ was that the ALJ was comparing the feature in the iPod touch with a specific feature in the embodiment. And the commission found that the ALJ couldn't do that based on this court precedent. But what the ALJ was required to do was to compare the feature, the accused device, with the claim construction, the ALJ's own claim construction. The ALJ's construction simply required a groove to be a long, narrow cut or ferrule. The commission found that the feature in the iPod touch was a long, narrow cut and that there was a tab disposed in the sub-shell case to fit within it. And if you take a look at the claim language itself, the claim language does not require a tight fit between the tab and the groove. It doesn't require that. The claim simply requires a groove, a long, narrow cut, and a tab that is disposed to fit within. It doesn't say anything about how deep it has to fit or how tight the fit must be. That isn't present in the claims. Anything else? Yes. Thank you. Thank you. Good morning, Your Honor. Can I please report? And just to answer your question, Judge O'Malley, what the patentee did when they made the amendment to groove, it was responding to a rejection based upon the fact that feature was too broad of a term and could be taught or suggested by the prior art. And then when groove was substituted in, the patent examiner agreed that the groove was not suggested or taught in the prior art. What was it that was taught in the prior art? Circles or what was the feature taught? Well, the features were so broad it could cover any type of shape or form. And that was basically what was raised in a very generic sense. And the patentee then amended and indicated that the groove was taught in at least one of the figures. And that at least, of course, dispenses with any claim made by Griffin that there was a claim disavowed. And by the same token, with regard to the argument that the patentee was his own lexicographer, or the patentees were their own lexicographers here in this case, is belied by the fact that there was no indication whatsoever in the patent that the inventors sought to redefine groove. They just used the word groove. And the pledge of an ordinary meaning of groove is as construed by the judge. And tellingly, this argument by Griffin that it had a completely different claim construction is really quite specious. The Griffin proposal of groove is construed to mean a long, narrow-channel furrow or depression. And the judge's construction as it's commissioned is that it's a long, narrow-cut or furrow, truly in the sense of distinction without a difference. And I'm speaking to the issue... And they didn't challenge the ALJ's construction before the commission? Not at all, no. They did not challenge it at all. There might, in fact, be a significant difference between their language of channel and the language of cut. Is that what I just heard you say? Well, channel, furrow, or depression, those are different things. But the word cut didn't appear in their proposal. Cut is not in there, that's correct. But you could, I think, cut is a synonym for channel, furrow, or depression. One could easily argue that. And don't forget, Mr. Clark was arguing about what they believe one of the ordinary skill in the art would argue. The fact of the matter is that Griffin never presented any evidence on infringement. It never cross-examined Mr. Anders, the expert on infringement. And the construction of its cases was undisputed. So this is all attorney argument. The construction of its cases, you mean? The construction of its physical cases, what were tabs, what were grooves, what were openings. And this opening argument can be dispensed with looking at this court's precedent, in that there's no law that says that claim terms are, by definition, mutually exclusive. You can have an opening that can be a groove if the opening is long and narrow. There's no doubt about that. And the opening can be something that goes all the way through. And as far as the groove having a bottom, really that stems from Griffin's argument, well, a groove has to have depth. But if I take this pad and I cut a groove through it all the way to the bottom, the depth is what the measurement of the thickness of the pad is. Just the fact that there's free space on one side and then on the other doesn't matter. Can I just ask you as a background matter, and maybe this isn't a brief sort of word, was there an invalidity issue in this proceeding? No. No, there was not, Your Honor. I think I believe it was raised. There may have been a challenge that was raised in the answer to the complaint by Griffin. I'm not positive about that, but there was no validity issue whatsoever under any of the grounds for invalidity that could be alleged. Let me ask you about the infringement analysis, though, because the ALJ's infringement analysis, again, it didn't really turn on the fact that the groove had to have a bottom or didn't have a bottom. Obviously, the ALJ said it didn't have to. It turned on the fact that the ALJ thought the pad didn't fit squarely within the groove if it was movable. And yet the commission didn't really seem to squarely address that point, does it? Well, that was, I believe, on the one product where the iPhone 4 product, that's not at issue here where that was made. This was the iPod Touch. On the iPod Touch, where the judge went astray was he looked at the tabs in the groove and he said, well, this looks similar to other items in the patent that are switch tabs or switch openings, and therefore, because they're not called a groove, looking at a particular embodiment, it can't be a groove. Well, that's not correct. No, what he said is he said that the tab does not fit into the corresponding groove because it is movable. So that was the basis, as I understood, for his infringement analysis. I think you may be on. Are you reading from the commission? JA-70? JA-70? Yes. It says this tab covers the volume up and down buttons on the phone and needs to be able to press down to activate the buttons. So the tab is capable of moving through the groove and therefore does not fit into the corresponding groove as the claim requires. Yes, he says it's capable of moving through the groove and does not fit into it. Right. But that infringement analysis, I don't see squarely addressed by the commission. The commission just said just because it serves another purpose doesn't mean it couldn't also infringe, but that wasn't really what the ALJ hung his hat on. He hung his hat on the fact that there wasn't a square fit between the tab and the groove. The problem with that, Your Honor, is that the commission did address it at pages 20 to 21 of its decision, which is JA-144 to 145, and where they say, We agree with the investigative attorney that the ALJ erred in its application of the construction of the claim term groove to the accused Griffin survivor for iPod Touch. Specifically, the only record evidence on point was the testimony of Mr. Sanders who testified that an elongated tab on the right side of the stretchable cushion layer that fits into a corresponding elongated groove on the hard shell cover meets the tab groove limitation as construed. Thus, the record evidence supports the finding that the accused Griffin survivor for iPod Touch infringes the asserted claims of the 122 patent. And what the judge did, he made an observation. He wasn't referring to any evidence because nobody testified to that effect. The only testimony of record using a physical exhibit was that the tab fit in the groove, and that's what Mr. Andrews testified to. He was not cross-examined on that. He was never questioned on that by the judge, and the commission accepted it. So the fact that the judge may have made that statement is really irrelevant in the sense that he was not relying on any evidence. He was just making observations on his own here. I'm not sure it's really that he wasn't relying on evidence. I mean, this was evidence. This is the thing. This is the actual. The physical case. Yeah, the physical case. And you look at it, and he's talking about this right here. He's saying, look, you can push this in. And so the tab moves in and out. It actually fits perfectly. There's no up and down movement in this direction, but there's side-to-side movement. And as I read the commission, the commission said, so what? Completely irrelevant to the claim construction. It's not the lack of evidence. It's just that there is nothing about the claim construction that speaks in any way to ability or lack of ability to move in and out. Correct. But what infects the judge's decision, looking at what Judge O'Malley referred to on JA-70, where the judge said, this feature does not meet the groove limitation. On close inspection, the tab Mr. Andrews identified is a switch pad, and the hole is an opening for the iPod controls. This is identical to the structure identified in the 122 patent on the switch pad and opening. And the fact that, as this court instructed in Pickles, that there's an unclaimed claim term that may meet a claim term is irrelevant. And also in APSTAR, which is 30 years old now, APSTAR v. Envirotech, if a component has multiple functions, that's irrelevant. If it meets the claim term, it infringes. Okay. I think you're over your time. Thank you very much. Mr. Clark, because Mr. Aniletto went over, we'll give you four minutes for rebuttal. Thank you, Your Honor. I have two points I'd like to address on rebuttal. Your Honor, with respect to the prosecution history and the movement from feature to groove, that all related to Defendant Claim 46. And the piece of prior art that they were attempting to distinguish was United States Patent 6980777. And that particular reference was combined with another primary reference. And in Figure 1B, they have a series of features, and in particular they're called surface features, that occur on the outside of a hard case for a home. And then you have a pad, the interior of a pad shown in Figure 3, that has a series of what appear to be corresponding surface features 136. It appeared to engage each other as the pouch surrounds the phone. So essentially what the applicant was at that point is he was facing a final rejection. He had a piece of prior art that showed certainly a device that had these surface features that were engaging each other that the examiner was assuming qualified to reject Claim 46 as citing a feature and a tab. So the way the advocate overcame that was to use the combination of groove and corresponding tab to overcome this reference in particular. The second point I'd like to address on rebuttal is this dictionary definition issue that keeps coming up. And I at least heard a suggestion, I believe, from the panel that cut was going to be sufficient to open the door on plain meaning to qualify a groove as an opening. And I think it's important to take a look at the dictionary definitions that Judge Essex considered in reaching the final claim construction. The final claim construction was a long, narrow cut or furrow, just not a long, narrow cut. The two staff dictionary definitions proposed was a long, narrow furrow or channel or, and here's the important part with regard to cut, a long, narrow furrow or hollow cut in, not through but in, a surface with a tool. What Griffin had proposed in contrast to these two was a long, narrow channel furrow or depression. So what Judge Essex did is he took all these dictionary definitions and came up with something that would be a hybrid of all these various dictionary definitions. Can a cut in something go through it? Excuse me, Your Honor? Can a cut in something go through it? Possibly, but that was not the dictionary definition that Judge Essex was considering when he established the plain meaning of this term. It doesn't say otherwise. As far as the final? If the final definition that Judge Essex has signed is No, the dictionary definition you read doesn't say otherwise. It doesn't say it can't go through it. It says it's in it. It says it's in it. Well, Your Honor And you've already conceded that that could mean through it. Your Honor, in my reading of that particular term, as compared to the ordinary use of the term groove, like a record groove or a groove in a highway or a groove for a door, groove does not mean through. Cut does not mean through when used to define groove. It means something completely different. Thank you, Your Honor. Okay, thank you.